RECEIVED
JAN - 7 2016
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| TERRANCE DEWAYNE BLOODSAW | CIVIL ACTION NO. 1:15-1710 |
| VERSUS | JUDGE JAMES T. TRIMBLE, JR. |
| LASALLE CORRECTIONS LLC | MAG. JUDGE PEREZ-MONTES |

## MEMORANDUM RULING

Before the court is a "Rule 12(B)(6) Motion to Dismiss Original and First Amended Complaint for Damages for Failure to State a Claim which Relief can be Granted and for Lack of Subject Matter Jurisdiction" (R. #16) wherein defendants, Gerald Starks, Director of the State of Louisiana Department of Corrections, Probation and Parole, James Leblanc, Secretary, Louisiana Department of Public Safety and Corrections, and the State of Louisiana, Department of Public Safety and Corrections, move the court to dismiss the Original and First Amended Complaint for Damages based upon a failure to state a claim for which relief can be granted and lack of subject matter jurisdiction.

### ALLEGATIONS

In his amended complaint, plaintiff makes the following allegations. On or about May 18, 2014, after being arrested, plaintiff, Terrance Bloodsaw, was transported to the LaSalle Correctional Center ("LCC") by the LaSalle Parish Sheriff's Office. Bloodsaw was placed in "G" dorm where he was struck in the face by an unknown inmate. After prison officials determined who the assailant was, he was removed from the dorm.

1

The next day while exercising, Bloodsaw was again attacked from behind by either one or two inmates. Bloodsaw's lower jaw was broken on the right and left side as well as the middle of his chin. Bloodsaw was transported to L.S.U. Hospital on Tuesday and again on Friday for review and to schedule a date for surgery to repair his jaw and chin.

Some time in mid-May 2014, Bloodsaw had facial surgery to repair his injuries which involved 12 staples implanted in his neck, screws in his jaws and stitches in his mouth. For safety reasons, Bloodsaw was placed in a lockdown cell both before and after his surgery.

On or about June 12, 2014, Bloodsaw was informed by a nurse at L.C.C. that he was being transferred back to the dorm with a LCC deputy posted outside of his cell to dispense medication to him. The nurse later informed him that the Warden would have to approve the transfer.

Out of fear for his safety, Bloodsaw requested in writing to the warden that he be transferred to a safer environment. Bloodsaw also made a request in writing to the Captain and the Major.

An LCC sergeant informed Bloodsaw that no disciplinary action was taken against the assailant inmate and Bloodsaw complains that he was treated as the aggressor. On or about July 2, 2014, Bloodsaw was placed in "F" dorm. Bloodsaw complains that he was in lockdown for 45 days.

On or about August 8, 2014, a screw in Bloodsaw's jaw came out; Bloodsaw inquired about receiving care for his injury but to no avail. On or about August 18, 2014 an Administrative Remedy Procedure ("ARP") was filed on Bloodsaw's behalf. On that same day, Bloodsaw was

informed by a nurse that he was scheduled to see the facility doctor to check on the progress of his injuries. Bloodsaw was seen by the doctor on August 22, 2014 who informed him that his jaw had developed an infection where a screw was placed in his jaw, and that the jaw was not properly aligned. Bloodsaw was prescribed antibiotics.

Bloodsaw alleges that on or about August 25, 2014 he was called to the office where he met with the warden, major, captain and sergeant and was asked to sign a blank sheet of the warden's letterhead paper concerning the ARP. Bloodsaw alleges that when he met with his attorneys the following day, he was not permitted to have a private meeting. On September 8, 2014, Bloodsaw alleges that he was again called to meet with the warden, major, captain and sergeant who demanded that he sign a document in reference to the ARP. Bloodsaw refused to sign the document and his ARP was denied on that same day.

After he refused to sign the document, one of Bloodsaw's attackers was placed in his dorm. Bloodsaw requested that the attacker be removed; the attacker was removed four (4) days later. Bloodsaw complains that he was subsequently harassed by an LCC Corporal who cussed, yelled and pointed fingers in his face.

On or about October 23, Bloodsaw had dental surgery to remove and/or replace the plates in his jaw. He was also prescribed stronger antibiotics for the infection in his jaw that had not properly healed.

In his prayer for relief, Bloodsaw seeks a declaration that the acts and omissions described in his lawsuit violated his rights under the Constitution of the United States. Bloodsaw seeks $1

million dollars in compensatory damages, $2 million dollars in punitive damages, costs of the suit, interest, and reasonable attorney fees.

## RULE 12(b)(6) STANDARD

Fed. R. Civ. P. 8(a)(2) requires that pleadings which state one or more claims for relief must contain "...a short and plain statement of the claim showing that the pleader is entitled to relief..." This "notice pleading" requirement is balanced against Fed. R. Civ. P. 12(b)(6), which provides that a court may dismiss one or more claims when the pleader fails to state a claim upon which relief may be granted.

For the purpose of considering a motion to dismiss pursuant to Rule 12(b)(6), the court must take all well-pled factual allegations as true and must view them in the light most favorable to the plaintiff.[1] The pleading must allege facts which, when taken as true, raise the pleader's claim for relief beyond the level of speculation or suspicion.[2] Conclusions of law or recitations of necessary elements of a claim will not suffice.[3]

The court's analysis is restricted to the pleading at issue, its proper attachments and matters of public record.[4]

---

[1] In re Katrina Canal Breaches Litigation, 495 F.3d 191 (5th Cir. 2007) (internal citations omitted).
[2] Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).
[3] Papasan v. Allain, 478 U.S. 265 (1986).
[4] Financial Acquisition Partners LP v. Blackwell, 440 F.3d 278 (5th Cir. 2006) (internal citations omitted).

## **LAW AND ANALYSIS**

Plaintiff, Terrance Bloodsaw seeks damages for injuries he sustained while an inmate at the LaSalle Correctional Center ("LCC"); he also seeks "declaratory relief" pursuant to 28 U.S.C. § 2201 and 2202. Specifically, he requests that this court declare "that the acts and omissions described herein violated his rights under the Constitution of the United States" and injunctive relief against the LCC staff to "cease any and all direct threats and intimidation toward Mr. Bloodsaw, and further to cease the deliberate neglect of managing Mr. Bloodsaw [sic] offsite treatment to his treating physicians for follow-up care," and a "preliminary and permanent injunction ordering each and all defendants on the LaSalle Parish Sheriff's Office to cease any and all direct threats and intimidation toward Mr. Bloodsaw."[5]

*Gerald Starks[6] and James LeBlanc, in their individual capacities*

Gerald Starks has been named as defendant in the original petition filed in this matter in his individual and official capacity as the "Director of the Louisiana Department of Corrections." It is alleged that he is legally responsible for the inmates remanded to custody of the Louisiana Department of Corrections. James LeBlanc has been named as a defendant in this matter in his "legal capacity as the current Secretary and acting Chief Executive Officer (CEO) of the Louisiana Department of Corrections." He is being sued in his individual and official capacity.

---

[5] R. #1, ¶ 54 and 55.
[6] Gerald Stark was named in the original petition as a defendant, but he was not named in the first amended petition. Plaintiff acknowledges this in his opposition brief (R. # 22, p. 5, fn. 1.). However, defendant Starks opted to move for dismissal with prejudice, and so this court will consider his motion despite the fact that he has been terminated as a defendant in this matter. See. R. # 8 dated September 16, 2015.

Defendant Starks contends that there are no factual allegations made in the petition that he acted personally in any capacity in this matter other than the conclusions made that he is responsible for inmates placed in the custody of the Louisiana Department of Corrections. Defendant Leblanc contends that the First Amended Complaint makes no factual allegations that LeBlanc acted in his personal capacity; neither the Original or the First Amended Petition for Damages contain any factual allegations that LeBlanc personally participated in any of the actions complained of in the complaints, as amended.

Starks and Leblanc argue that they are entitled to qualified immunity in their individual capacities. Thus, these defendants maintain that any claims made against them in their individual capacities must be dismissed. "Qualified immunity protects public officers from suit if their conduct does not violate any 'clearly established statutory or constitutional rights of which a reasonable person would have known."[7] To defeat a defense of qualified immunity, the plaintiff must show "the officer violated a clearly established constitutional right [and that] the official's conduct was objectively unreasonable under established law."[8]

Because defendants seek qualified immunity in a motion to dismiss under Rule 12(b)(6), we accept all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff. "One of the most salient benefits of qualified immunity is protection from pretrial discovery, which is costly, time-consuming, and intrusive."[9] Before permitting discovery, a court

---

[7] Jones v. Board of Supervisors of the University of Louisiana System, et al, 58 F. Supp. 3d 670 (W.D. La.2014)(citing Prison Legal News v. Livingston, 683 F.3d 201, 224 (5th Cir. 2012) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 102 S.Ct. 2727 (1982)).
[8] Linbrugger v. Abercia, 363 F.3d 537, 540 (5th Cir. 2004).
[9] Perez v. Texas A & M Univ. at Corpus Christi, 2014 WL 5510955, at *2-3 (5th Cir. Nov. 3, 2014).

6

must first find "that the plaintiff's pleadings assert facts which, if true, would overcome" a qualified immunity defense.[10]

Plaintiff has failed to show that either LeBlanc or Starks violated a clearly established constitutional right and that these official's conduct was objectively unreasonable under established law. Therefore, the claims made against LeBlanc and Starks in their individual capacity will be dismissed with prejudice.

*Starks and LeBlanc in their official capacities*

Starks and LeBlanc maintain that they should be dismissed in their official capacities; they maintain that they are immune from a suit for damages because they are not deemed to be a "person" within the meaning of 42 U.S.C. § 1983. A suit against a state official in their official capacity is a suit against the state. In Will v. Michigan Dept. of State Police,[11] the United States Supreme Court held that a neither a State nor its officials acting within their official capacities are "persons" under 42 U.S.C. § 1983 and thus should be dismissed. Because the Eleventh Amendment bars suit against state officials in their official capacity, the claims against Starks and LeBlanc will also be dismissed with prejudice because they are barred.

*The State of Louisiana, Department of Public Safety and Corrections*

The Department of Public Safety and Corrections maintains that it is immune from suit by the 11th Amendment. In Jones v. Board of Supervisors of the University of Louisiana System, et

---

[10] Id.
[11] 491 U.S. 58, 109 S.Ct. 2304 (1989).

al,[12] the court held that the "Eleventh Amendment to the United States Constitution bars suits in federal court by citizens of a state against their own state or a state agency or department." Accordingly, we find that the State of Louisiana, Department of Public Safety and Corrections should be dismissed based on its Eleventh Amendment immunity.

*Injunctive relief*

A plaintiff is not barred by the Eleventh Amendment from bringing suit for prospective, injunctive relief against state officials named as defendants in their official capacities.[13] Defendants assert that plaintiff is not seeking injunctive relief against Starks and LeBlanc. Defendants refer the court to plaintiff's first amending petition which prays for injunctive relief specifically against the LaSalle Corrections Center and the LaSalle Sheriff's Office.

Plaintiff disagrees and contends that it is seeking declaratory and injunctive relief against defendants, Starks and LeBlanc, because they are the alleged state actors that have caused plaintiff's harm. Thus, he argues that he is allowed to seek declaratory relief against them. The amended complaint seeks no injunctive and/or declaratory relief against Starks and LeBlanc. Therefore, these defendants will be dismissed from this lawsuit with prejudice.

---

[12] 58 F.Supp.3d 670 (2014); See also Voisin's Oyster House, Inc. v. Guidry, 799 F.2d 183, 185-86 (5th Cir. 1986).
[13] See Ex parte Young, 209 U.S. 123, 28 S.Ct. 441 (1908).

## **CONCLUSION**

For the reasons stated above, the motion to dismiss defendants, Gerald Starks, James LeBlanc and the State of Louisiana, Department of Public Safety and Corrections will be granted dismissing these defendants with prejudice.

**THUS DONE AND SIGNED** in chambers on this 7th day of January, 2016.

_____
JUDGE JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE